Benjamin Cole BENET, Appellant

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2006–SC–000422–MR.

Supreme Court of Kentucky.

May 22, 2008.

Susan Jackson Balliet, Assistant Public Advocate, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, Jeffrey A. Cross, Assistant Attorney General, Criminal Appellate Division, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice MINTON.

## I. INTRODUCTION.

Benjamin Cole Benet appeals from a circuit court judgment sentencing him to twenty years' imprisonment for first-degree sodomy and five years' imprisonment for first-degree sexual abuse, to be served consecutively, for a total of twenty-five years' imprisonment. Finding no error, we affirm.

## II. FACTUAL AND PROCEDURAL HISTORY.

A woman in a Wal–Mart parking lot thought she saw Benet molesting a little boy. The little boy was a five-year old, whom we will call J.T. Based on the woman's report, Benet eventually was arrested and indicted for one count of first-degree sodomy and one count of first-degree sexual abuse. The charges against Benet proceeded to a jury trial. The jury found Benet guilty of sodomy in the first degree by having deviate sexual intercourse with J.T., who was less than twelve years of age, and of sexual abuse in the first degree by subjecting J.T. to sexual contact when J.T. was less than twelve years of age. The jury recommended that Benet be sentenced to twenty years' imprisonment for the sodomy conviction and five years' imprisonment for the sexual abuse conviction, to be served concurrently, for a total of twenty years' imprisonment.

Before sentencing, the Commonwealth filed a written motion asking the trial court to order Benet's sentences to be served consecutively. The Commonwealth also asked the trial court to make a finding that Benet was a violent offender, as that term is used in Kentucky Revised Statutes (KRS) 439.3401.[1] Benet filed a written response to the Commonwealth's motion, in which he argued that "[a]s applied to the defendant herein, KRS 439.3401(1) lacks the rational basis between crime and punishment and, therefore, violates the

---

1. KRS 439.3401 provides, in relevant part, as follows:

(1) As used in this section, "violent offender" means any person who has been convicted of or pled guilty to the commission of:
   (a) A capital offense;
   (b) A Class A felony;
   (c) A Class B felony involving the death of the victim or serious physical injury to a victim;
   (d) The commission or attempted commission of a felony sexual offense described in KRS Chapter 510;
   (e) Use of a minor in a sexual performance as described in KRS 531.310;
   (f) Promoting a sexual performance by a minor as described in KRS 531.320;
   (g) Unlawful transaction with a minor in the first degree as described in KRS 530.064(1)(a);
   (h) Human trafficking under KRS 529.100 involving commercial sexual activity where the victim is a minor;
   (i) Criminal abuse in the first degree as described in KRS 508.100;
   (j) Burglary in the first degree accompanied by the commission or attempted commission of an assault described in KRS 508.010, 508.020, 508.032, or 508.060;
   (k) Burglary in the first degree accompanied by commission or attempted commission of kidnapping as prohibited by KRS 509.040; or
   (l) Robbery in the first degree.
   The court shall designate in its judgment if the victim suffered death or serious physical injury.
(2) A violent offender who has been convicted of a capital offense and who has received a life sentence (and has not been sentenced to twenty-five (25) years without parole or imprisonment for life without benefit of probation or parole), or a Class A felony and receives a life sentence, or to death and his sentence is commuted to a life sentence shall not be released on probation or parole until he has served at least twenty (20) years in the penitentiary. Violent offenders may have a greater minimum parole eligibility date than other offenders who receive longer sentences, including a sentence of life imprisonment.
(3) A violent offender who has been convicted of a capital offense or Class A felony with a sentence of a term of years or Class B felony who is a violent offender shall not be released on probation or parole until he has served at least eighty-five percent (85%) of the sentence imposed.
   We are aware that KRS 439.3401 has been amended since Benet was sentenced. We have quoted the current version of the statute because we do not believe, for purposes of the issues involved in this appeal, that the amendments that occurred after Benet's sentencing will substantively change the result of this opinion.

constitutions of the United States and the Commonwealth of Kentucky." At sentencing, the trial court granted the Commonwealth's motion and sentenced Benet to twenty years for the sodomy offense and five years for the sexual abuse offense, to be served consecutively. The trial court's final judgment makes no mention of whether Benet is a violent offender under KRS 439.3401. Benet then filed this appeal as a matter of right.[2]

## III. *ANALYSIS.*

Benet raises several somewhat interrelated arguments. He contends that (1) KRS 439.3401 is unconstitutional as applied to him,[3] (2) the trial court abused its discretion by sentencing him to a more onerous sentence than that recommended by the jury, and (3) his convictions for both sodomy and sexual abuse violate double jeopardy. We decline to address the constitutionality of KRS 439.3401 because the issue was not properly preserved for our review. We disagree with Benet's remaining contentions and, thus, affirm.

### A. *Benet Has Not Properly Preserved His Argument that KRS 439.3401 is Unconstitutional.*

■ Benet contends that KRS 439.3401 is unconstitutional as applied to him because its application would result in him being classified as a violent offender even though his sodomy offense, apparently, did not involve forcible compulsion (*i.e.*, violence).[4] Benet further contends that it is irrational and arbitrary to punish more severely a perpetrator who sodomizes a victim under twelve (such as an eleven-year old) than a perpetrator who sodomizes a victim twelve or over (such as a twelve-year old).[5]

In view of the strong presumption in favor of the constitutionality of a statute,[6] the General Assembly's right to choose the level and nature of punishment for crimi-

---

**2.** *See* Ky. Const. § 110(2)(b).

**3.** Originally, Benet contended that KRS 510.170 is unconstitutional on its face. However, there is no statute designated as KRS 510.170. In his reply brief, Benet withdraws his challenge to KRS 510.070. We must assume, therefore, that any reference to KRS 510.170 in Benet's original brief is a typographical error. In any event, the constitutionality of KRS 510.070 is no longer before us. The confusion is magnified by the fact that Benet's reply brief maintains that "the application of KRS 439.265, render[ing] him [Benet] subject to the 85% parole ineligibility [sic] rule, is unconstitutional." However, KRS 439.265 governs shock probation and presentence evaluation for sex offenders. KRS 439.3401(3) provides that a violent offender is not eligible for parole until serving at least eighty-five (85%) percent of his sentence. Furthermore, KRS 439.265 is not cited in Benet's original brief. Thus, we must assume that the reference to KRS 439.265's alleged constitutional infirmity is another typographical error.

**4.** Under the current version of KRS 439.3401, it appears as if his sexual abuse conviction may also result in Benet being classified as a violent offender. *See* KRS 439.3401(1)(d). Under the version of KRS 439.3401 in effect at the time of Benet's sentencing, the sexual abuse offense, standing alone, may not have resulted in Benet's classification as a violent offender. We express no opinion as to whether Benet's sexual abuse conviction has any bearing on his classification as a violent offender as that issue is not germane to this appeal.

**5.** KRS 510.070 provides that a person who commits a sodomy offense against someone less than twelve years of age has committed a Class A felony; whereas, the offense is a Class B felony if the victim is twelve or older.

**6.** *See, e.g., Kraus v. Kentucky State Senate,* 872 S.W.2d 433, 438 (Ky.1993).

nal offenses,[7] the obvious need to draw some specific line of demarcation in the potential punishment meted out to those offenders who commit more serious crimes within the range of possible sex offenses,[8] and the inarguable fact that the existence of parole at all is a matter of legislative grace,[9] we are skeptical of Benet's claim. Our skepticism is magnified by Benet's failure to provide us with any real supporting authority for his argument. But we need not express a binding opinion on the matter because Benet has failed properly to preserve the issue for our review.

KRS 418.075(1) provides, in relevant part, that "[i]n any proceeding which involves the validity of a statute, the Attorney General of the state shall, before judgment is entered, be served with a copy of the petition, and shall be entitled to be heard...."[10] We have made plain that strict compliance with the notification provisions of KRS 418.075 is mandatory[,][11] meaning that even in criminal cases, we have refused to address arguments that a statute is unconstitutional unless the notice provisions of KRS 418.075 had been fully satisfied.[12]

In the case at hand, Benet admits that he did not notify the Attorney General of his constitutional challenge during the pendency of the circuit court proceedings. Thus, Benet has failed fully and timely to comply with the strict rubric of KRS 418.075, leaving his constitutional challenge unpreserved for our review. Because the plain language of KRS 418.075 requires notice be given to the Attorney General prior to the entry of judgment, we reject any contention that merely filing an appellate brief, which necessarily occurs post-judgment, satisfies the clear requirements of KRS 418.075.[13]

■ Likewise, we reject the Court of Appeals' undoubtedly well-intentioned conclusion that an appellate court may rule on an "as applied" challenge to a statute's constitutionality, even if a party's failure to

---

7. See, e.g., Wilfong v. Commonwealth, 175 S.W.3d 84, 92 (Ky.App.2004).

8. Cf. Cornelison v. Commonwealth, 52 S.W.3d 570, 573 (Ky.2001) (rejecting comparable argument that General Assembly had chosen arbitrary, unconstitutional level of blood alcohol content to increase punishment for repeat DUI offenders).

9. See Commonwealth v. Vincent, 70 S.W.3d 422, 424 (Ky.2002), quoting Willard v. Ferguson, 358 S.W.2d 516 (Ky.1962).

10. Accord Kentucky Rules of Civil Procedure (CR) 24.03 (emphasis added).

11. Maney v. Mary Chiles Hospital, 785 S.W.2d 480, 482 (Ky.1990).

12. See, e.g., Hayes v. Commonwealth, 175 S.W.3d 574, 589 (Ky.2005).

13. See Brashars v. Commonwealth, 25 S.W.3d 58, 65–66 (Ky.2000) (rejecting argument that notice to the Attorney General regarding constitutionality of a statute was not required because the Commonwealth was already a party to the criminal action); Jacobs v. Commonwealth, 947 S.W.2d 416, 419 (Ky.App. 1997) ("We recognize that in criminal cases such as this the Commonwealth is represented at the trial level by local prosecuting officials. However, Kentucky, unlike the United States and some sister states, does not have a unified prosecutorial system. Although there is a relationship between the Attorney General and local prosecuting officials, Commonwealth's Attorneys do not answer to the Attorney General. See generally KRS 15.220 and 15.725. Since the Attorney General is elected by registered voters from throughout the Commonwealth, he is in a unique position to defend the constitutionality of an act of the General Assembly. The Attorney General must be given this opportunity at the trial level because a declaration regarding the constitutionality of a statute affects all the citizens of the Commonwealth, not just the citizens represented by the local prosecuting official. For that reason, we conclude that the notice requirements of [KRS 418.075] must be met in criminal, as well as civil, actions.").

comply with KRS 418.075 meant that the same court could not consider a constitutional challenge to the facial validity of a statute.[14] Although the Court of Appeals' novel approach may have some superficial appeal, it cannot withstand close scrutiny because KRS 418.075 contains no exceptions for "as applied" challenges. When no exceptions exist in a statute, there is a presumption that the lack of exceptions reflects a conscious decision by the General Assembly; and a court lacks authority to graft an exception onto a statute by fiat.[15] Rather, a reviewing court must interpret a statute as written, without adding to or subtracting from the legislative enactment.[16] Therefore, the Court of Appeals' statement in *Sherfey*[17] that a reviewing court has the power to review improperly preserved "as applied" constitutional challenges must be overruled as being inconsistent with the plain, unambiguous language of KRS 418.075.

Based on the foregoing, we must decline to review the merits of Benet's "as applied" challenge to the constitutionality of KRS 418.3401.

B. *Failure to Designate Violent Offender of No Legal Significance.*

■ Additionally, we also reject Benet's argument that he should not be, or cannot be, classified as a violent offender under KRS 439.3401 because the trial court's final judgment did not specifically designate him as a violent offender. We agree with the Court of Appeals' recent conclusion that a defendant automatically becomes a violent offender at the time of his or her conviction of an offense specifically enumerated in KRS 439.3401(1) regardless of whether the final judgment of conviction contains any such designation.[18] Thus, the trial court's failure to designate Benet as a violent offender in the final judgment of conviction is, at least for purposes of this appeal, of no legal significance.[19]

C. *The Trial Court Did Not Abuse Its Discretion by Ordering Benet's Sentences to Be Served Consecutively.*

■ Benet contends that the trial court erred when it sentenced him to consecutive

---

14. *Sherfey v. Sherfey*, 74 S.W.3d 777, 781 n. 7 (Ky.App.2002) ("It is not clear from their brief whether Mark and Laurie contest the facial constitutionality of the statute or whether they merely challenge the statute's constitutional validity as applied to them. In any event, we can only address the 'as-applied' constitutional challenge because the Attorney General was not given notice of the facial challenge pursuant to KRS 418.075 and Kentucky Rules of Civil Procedure (CR) 24.03.").

15. *Commonwealth ex rel. Cowan v. Wilkinson*, 828 S.W.2d 610, 614 (Ky.1992).

16. *See, e.g., Beckham v. Board of Education of Jefferson County*, 873 S.W.2d 575, 577 (Ky. 1994).

17. 74 S.W.3d at 781 n. 7.

18. *Wathal v. Harrod*, 229 S.W.3d 599, 600 (Ky.App.2007).

19. The trial court is required to designate in its judgment that a victim suffered death or other serious physical injury. KRS 439.3401(1). Since the victim in this case did not suffer death or a serious physical injury, the trial court was not required to make any such designation in Benet's final judgment.

> On a closely related note, however, we disagree with *Wathal's* conclusion that a trial court is required to designate in its final judgment that a victim either died of received a serious physical injury "only if the crime is a Class B felony not otherwise delineated in the statute. KRS 439.3401(c)." 229 S.W.3d at 600. Rather, we find that the trial court is required to designate in its judgment that a victim suffered death or other serious physical injury whenever a defendant is convicted of any of the offenses listed in KRS 439.3401(1).

twenty- and five-year sentences, despite the jury's recommendation that he serve concurrent sentences. We disagree.

We have firmly and repeatedly held that "the method of service of sentence is subject only to a recommendation by a jury[,]"[20] a recommendation that a trial court may ultimately decline to follow.[21] Thus, we would routinely affirm Benet's sentence were it not for the curious case of *Smith v. Commonwealth.*[22]

In *Smith*, the defendant was convicted of first-degree rape and first-degree sodomy. The jury recommended life sentences for both offenses, to be served consecutively; but the trial court sentenced the defendant to two consecutive twenty-five year sentences.[23] On appeal, the defendant argued that even though the trial court had, on its face, reduced his sentences, the trial court had, in actuality, increased his sentence because the cumulative sentences imposed by the trial court caused the defendant's parole eligibility date to be later than would a life sentence.[24]

We agreed, noting that no sentence can be ordered to be run consecutive to a life sentence; but the trial court's modification of the jury's recommended sentence resulted in defendant's parole eligibility being increased from twelve years to twenty-five years.[25] Thus, we held that the sentence imposed by the trial court was "clearly more severe than the sentence fixed by the jury."[26] Therefore, we vacated the defendant's sentence because the trial court could modify a sentence it believed was unduly harsh but lacked the power to "impose a more onerous penalty in benignant guise."[27]

We have never attempted in a published opinion to reconcile the principle that trial judges are not bound by a jury's recommendation regarding consecutive or concurrent sentences and *Smith's* opposite proclamation that a trial court lacks the power to refuse to follow a jury's recommendation if such a refusal might adversely affect a defendant's parole eligibility. But having now fully considered these irreconcilable principles, we have concluded that *Smith* must be overruled.

We begin by stating that we do not know with certainty what effect, if any, the trial judge's refusal to follow the jury's recommendation has had on Benet's parole

---

**20.** *Dotson v. Commonwealth,* 740 S.W.2d 930, 931 (Ky.1987).

**21.** *See, e.g., Wombles v. Commonwealth,* 831 S.W.2d 172, 176 (Ky.1992) (holding that a jury's recommendation regarding concurrent sentences for a defendant "is not binding upon the trial court at the defendant's final sentencing.").

**22.** 806 S.W.2d 647 (Ky.1991).

**23.** *Id.*

**24.** *Id.*

**25.** *Id.* At the time, inmates classified as violent offenders under KRS 439.3401 were required to serve at least twelve years of a life sentence before being eligible for parole and

fifty percent of a sentence of a term of years before being first eligible for parole. *Id.* Under the current version of KRS 439.3401, a violent offender sentenced to a life sentence must serve at least twenty years before being eligible for parole; and a violent offender sentenced to a term of years for the commission of certain Class A or Class B felonies must serve eighty-five (85%) percent of the sentence imposed before being eligible for parole. KRS 439.3401(2)-(3). An offender not classified as a violent offender sentenced to between two and thirty-nine years imprisonment normally must serve only twenty (20%) percent of his or her sentence before being eligible for parole. 501 KAR 1:030 § 3(a).

**26.** *Smith,* 806 S.W.2d at 647.

**27.** *Id.* at 648.

eligibility.[28] This uncertainty is of no import to this appeal, however, because we now hold that a trial court has the discretion to decline to follow a jury's recommendation regarding whether a sentence should be served concurrently or consecutively, regardless of any parole eligibility implications for a defendant.

We have repeatedly affirmed a trial court's decision to order a defendant to serve consecutive terms of incarceration in the face of a jury's recommended concurrent sentencing.[29] Tellingly, although logic would dictate that the trial court's failure to follow the jury's recommendation in those cases might have adversely affected the defendant's parole eligibility, we did not discuss what impact, if any, the trial court's decision had on the defendant's parole eligibility date. *Smith*, therefore, would appear to be an aberration in our jurisprudence.

If we followed the strict dictates of *Smith*, then a jury's recommendation that multiple sentences be served consecutively could be disregarded by a court (because such a change to concurrent sentences would surely not adversely affect a defendant's parole eligibility); but a jury's recommendation that multiple sentences be served concurrently would morph from a recommendation to a binding directive (because such a change could adversely affect a defendant's parole eligibility date). Such a dichotomy is illogical and improper.

■ Therefore, we refuse to require the trial judges of this state to be compelled invariably to follow a jury's recommendation regarding whether multiple sentences be served concurrently or consecutively. Rather, the trial judges of the Commonwealth should sentence all defendants facing multiple terms of incarceration as a trial judge believes in the exercise of discretion is a proper sentence, even if that proper sentence deviates from a jury's recommendation. Of course, it is beyond cavil that trial judges may not increase the sentence actually determined by the jury; but trial judges are not bound by the jury's recommendation of how that sen-

---

28. In its motion asking the trial court to sentence Benet to consecutive terms of imprisonment, the Commonwealth contended that imposition of consecutive sentences would not affect Benet's parole eligibility since the sodomy offense would subsume the sexual abuse offense for purposes of calculating parole eligibility. By contrast, Benet relies upon a probation and parole officer's testimony at trial that running the sentences consecutively would postpone Benet's parole eligibility date.

In response, the Commonwealth contends, correctly, that the probation and parole officer's testimony is not binding upon Benet's ultimate parole eligibility date because the Parole Board is charged with reviewing an inmate's parole status. Moreover, Benet has presented no evidence from the Department of Corrections or the Parole Board as to when he will be eligible for parole or when he would have been eligible for parole had his sentences been ordered to be served concurrently.

29. *See Wombles,* 831 S.W.2d at 176 (affirming trial court's decision to run some convictions consecutively for total term of imprisonment of forty years when jury had recommended all convictions be served concurrently for total term of imprisonment of twenty years); *Murphy v. Commonwealth,* 50 S.W.3d 173, 178 (Ky.2001) (affirming trial court's decision to sentence defendants to consecutive terms of imprisonment totaling twenty-five years when jury had recommended concurrent terms of imprisonment totaling ten years); *Nichols v. Commonwealth,* 839 S.W.2d 263, 264–65 (Ky. 1992) (affirming trial court's decision to impose consecutive terms of imprisonment totaling ten years despite jury's recommended concurrent sentences totaling five years' imprisonment); *Jones v. Commonwealth,* 833 S.W.2d 839, 842 (Ky.1992) (affirming trial court's decision to impose two consecutive twenty-year imprisonment terms when jury recommended two concurrent twenty-year terms).

tence shall be served.[30]

Thus, because it conflicts with the bedrock principle that a trial court has the inherent discretion to decline to follow a jury's recommendation regarding whether multiple sentences should be served concurrently or consecutively, *Smith* must be overruled.

Application of the foregoing logic leads to the conclusion that the trial court did not err when it sentenced Benet to consecutive terms of imprisonment.

### D. *Benet's Convictions for Sodomy and Sexual Abuse Are Not Barred by Double Jeopardy.*

The child victim testified that Benet touched his genital area through his clothes and that Benet orally sodomized him. Benet contends that his convictions for both sodomy and sexual abuse violate the principle against double jeopardy because there was insufficient evidence for a jury to have reasonably concluded that Benet's touching of the victim's genital area through the victim's clothes was done for Benet's sexual gratification. Instead, Benet contends that the evidence showed that he somehow touched the child's genital area in response to the child urinating in the Wal–Mart parking lot. We disagree.

■ Initially, we note that although it is couched in double-jeopardy terms, Benet's argument is really an assertion that there was insufficient evidence to support his sexual abuse conviction. As such, Benet is actually arguing that he should have been entitled to a directed verdict.

■ As we have written many times, Benet was entitled to a directed verdict only if there was no evidence from which a reasonable juror could have found him guilty.[31] In the case at hand, a reasonable juror could have inferred that the touching of the victim's genitals through the victim's clothing was for the purposes of Benet's sexual gratification in light of the fact that Benet orally sodomized the victim quite close in time to when he touched the clothing over the victim's genitals and, furthermore, because the Commonwealth presented testimony that Benet had similarly touched other young boys' genitals through their clothing.[32]

■ Turning to an actual double-jeopardy argument, under KRS 505.020(1)(a), a defendant may not be convicted for more than one offense occurring during a single course of conduct if one offense is included in another. Benet contends that his convictions fall within this prohibition because the sexual abuse conviction was a lesser included offense of the sodomy conviction in that a person cannot commit sodomy without also committing the offense of sexual abuse. Benet's argument ignores, however, the fact that his touching of the victim's genitals through the victim's clothing is an entirely separate act and offense than his orally sodomizing the victim. We

---

**30.** *Dotson,* 740 S.W.2d at 931 ("The trial judge always has the power to reduce a sentence and not to increase one. However here the method of service of sentence is subject only to a recommendation by the jury.").

**31.** *Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky.1991).

**32.** *See, e.g., Bills v. Commonwealth,* 851 S.W.2d 466, 471 (Ky.1993) (holding that a trial court properly denied a directed verdict in a case involving both sodomy and sexual abuse because "[i]t was within the province of the jury to determine by method of reasonable inference whether the situation described here amounted to sexual contact.... The fact that Bills had previously made sexual advances toward the victim in Lexington indicates that he was acting for the purpose of sexual gratification.").

have rejected this type of argument in the past. And Benet has not persuaded us that our earlier decision was erroneous.[33] So we reject Benet's double-jeopardy argument.

### III. *CONCLUSION.*

For the foregoing reasons, Benjamin Benet's convictions and sentences are affirmed.

All sitting. All concur.

---

33. *Hampton v. Commonwealth*, 666 S.W.2d 737, 739–40 (Ky.1984) ("Appellant argues that first-degree sexual abuse is a lesser-included offense of first-degree sodomy in the sense that the 'sexual contact' necessary to prove sexual abuse is a necessary component of sodomy. Nevertheless, here the separate charge of sexual abuse is based not on incidental contact, but on a separate act of sexual gratification. The fact that the two sexual acts occurred either simultaneously or nearly so is irrelevant.... This case passes the 'Blockburger rule' for determining whether separate offenses from a single transaction can properly be charged. *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).").

*See also Bills*, 851 S.W.2d at 472 ("The removal of the victim's clothing was unnecessary in regard to the sex act involving oral sodomy. The two acts did not merge even though they may have occurred close in time. The contact was not incidental but rather related to sexual gratification."); *Van Dyke v. Commonwealth*, 581 S.W.2d 563, 564 (Ky.1979) ("The legislature intended to punish each separate act of rape or sodomy. The fact that the acts occurred in a brief period of time with the same victim and in a continuum of force does not protect Van Dyke from prosecution and conviction of each separate offense.").