**John KESSLER, Appellant**

v.

**Rebecca SWITZER, Appellee.**

**No. 2008–CA–002083–ME.**

Court of Appeals of Kentucky.

June 5, 2009.

Bruce A. Brightwell, New Albany, IN, for appellant.

Grant M. Helman, Louisville, KY, for appellee.

Before CAPERTON, KELLER, and LAMBERT, Judges.

## OPINION

LAMBERT, Judge.

John Kessler appeals an extension of a domestic violence order entered by the Jefferson Circuit Court. After careful review, we affirm.

Rebecca Switzer and John Kessler were married on January 8, 2005, and began experiencing marital difficulties in July 2005. On August 2, 2005, Kessler was arrested due to an altercation between the parties, and on November 14, 2005, Switzer filed for a domestic violence order (hereinafter "DVO"). Following a full evidentiary hearing, a DVO was entered on November 28, 2005, and was effective for three years, expiring on November 28, 2008. While the DVO was in effect, the parties continued to experience difficulties, and Switzer initiated criminal charges against Kessler, which were later dismissed after six months of no contact between the parties.

On October 10, 2008, Switzer filed a motion to extend the DVO and attached an affidavit stating that she had filed charges against Kessler for allegedly violating the DVO and that she was still in fear of Kessler. The matter came before the Jefferson Circuit Court on October 20, 2008, and Switzer's counsel admitted that the charges against Kessler for allegedly violating the DVO had been dismissed. Kessler objected to extending the DVO without having a hearing whereby Switzer could testify and be cross-examined, but the court overruled that objection. Kessler also objected to extending the DVO because there was no standard for extending it. After overruling that objection, the trial court amended the DVO, extending it for one year. This appeal followed.

KRS 403.750(1) provides that the district court may enter a domestic violence order "if it finds from a preponderance of the evidence that an act or acts of domestic violence and abuse have occurred and may again occur[.]" "Domestic violence and abuse," as defined in the statutes, includes "physical injury, serious physical injury, sexual abuse, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, or assault between family members or members of an unmarried couple[.]" KRS 403.720(1). A DVO may restrain the adverse party from certain conduct, including contacting or communicating with the victim, committing further acts of domestic violence and abuse, and disposing of or damaging any of the parties' property. KRS 403.750(1)(a)–(c).

KRS 403.750(2) provides for the reissuance of a DVO. It states as follows:

Any order entered pursuant to this section shall be effective for a period of time, fixed by the court, not to exceed three (3) years and may be reissued upon expiration for an additional period of up to three (3) years. The number of times an order may be reissued shall not be limited. With respect to whether an order should be reissued, any party may present to the court testimony relating to the importance of the fact that acts of domestic violence or abuse have not occurred during the pendency of the order.

Kessler argues on appeal that his right to due process was violated because the court did not have a hearing where Switzer could testify and be subjected to cross-examination before extending the DVO. Kessler argues that the significant restrictions on a person's liberty interests inherent in a DVO require that a hearing should be held before an extension of a DVO is entered. Further, Kessler relies

on this Court's analysis in *Baird v. Baird,* 234 S.W.3d 385 (Ky.App.2007), to support his argument that a hearing is necessary in this context. In *Baird,* this Court stated: "[d]uring the 2007 hearing, the family court in this case heard testimony from several witnesses, including both Norman and Shirley. At the conclusion of the evidence, the court found from a preponderance of the evidence that there was a continuing need for the DVO." *Id.* at 388. Further, the Court stated:

[c]learly, the family court was familiar with the history of the parties, and was within its authority to weigh the testimony, make credibility judgments, and conclude that the evidence supported the reissuance of the DVO. We are of the opinion that the evidence presented during the hearing established sufficient grounds, other than simply Shirley's peace of mind, to reissue the DVO. Since the court's finding is supported by sufficient evidence and is not clearly erroneous, we affirm its decision.

(citation omitted). Thus, Kessler argues that because the trial court in *Baird* conducted a hearing before extending the DVO, and because we found sufficient evidence from the hearing to affirm the extension, a hearing is required in all cases where an extension of a DVO is sought.

We disagree. First, the statute does not unequivocally require such a hearing and instead states that a party may present testimony relating to the fact that acts of domestic violence have not occurred during the pendency of the DVO. Thus, Kessler was free to present evidence and testimony that domestic violence had not occurred during the three year DVO, which he chose not to do. Nothing in the statute requires Switzer to have presented proof of continuing violence or violations of the DVO. Further, in *Kingrey v. Whitlow,* 150 S.W.3d 67 (Ky.App.2004) (Judge Knopf, concurring), this Court held that the absence of any violence committed during the pendency of the DVO did not prevent a trial court from extending the order. Writing for the Court, Judge Buckingham stated:

we do not read the statute as requiring proof of additional acts of domestic violence or abuse during the prior period before a DVO may be reissued. Rather, the statute makes it clear that testimony that such acts did not occur may be presented for the court's consideration in determining whether or not to reissue the order.

*Id.* at 69. Further, the court noted that "[a]ll statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature[.]" KRS 446.080(1). Finally, the court stated:

[i]n addition to the language in the statute itself, we conclude it is logical to believe that the legislature intended to give the district courts authority to reissue DVOs even in the absence of additional acts of domestic violence and abuse during the prior period. The domestic violence and abuse statutes are to be interpreted by the courts to allow victims to obtain protection against further violence and abuse. *See* KRS 403.715(1). If a DVO has been effective in giving protection to a victim of domestic violence and abuse, then the district court should not be required to reject a request to extend the effective period of the DVO simply because no additional acts have occurred. In other words, the fact that a DVO has been effective in preventing acts of domestic violence and abuse is not a reason to require the court to remove the protection that had previously been afforded to the victim. Rather, it is merely a factor for the

court to consider when faced with a request to reissue the DVO.

We agree with the *Kingrey* Court that KRS 403.750(2) does not require proof of additional acts of violence and that a hearing is therefore not required before an extension of a DVO is ordered. The statute clearly does not require a hearing. Further, if a hearing was required, the process articulated in KRS 403.750(2) for extending a DVO would be rendered useless, as the process would be the same as the process for originally granting a DVO. Clearly the legislature did not intend this result or the statute would not have a procedure for extending the DVO.

■ Kessler next argues that Kentucky Revised Statute (KRS) 403.750(2) is unconstitutional, because it fails to provide any standard for extending a DVO. KRS 418.075 provides:

(1) In any proceeding which involves the validity of a statute, the Attorney General of the state shall, before judgment is entered, be served with a copy of the petition, and shall be entitled to be heard, and if the ordinance or franchise is alleged to be unconstitutional, the Attorney General of the state shall also be served with a copy of the petition and be entitled to be heard.

(2) In any appeal to the Kentucky Court of Appeals or Supreme Court or the federal appellate courts in any forum which involves the constitutional validity of a statute, the Attorney General shall, before the filing of the appellant's brief, be served with a copy of the pleading, paper, or other documents which initiate the appeal in the appellate forum. This notice shall specify the challenged statute and the nature of the alleged constitutional defect.

*See also* CR 24.03.

In *Benet v. Commonwealth,* 253 S.W.3d 528, 532 (Ky.2008), the Kentucky Supreme Court held that KRS 418.075 must be fully satisfied and found that because Benet had not notified the Attorney General of his constitutional challenge during the pendency of the circuit court proceedings, he had failed to fully and timely comply with the strict rubric of the statute. Therefore, his constitutional challenge was not preserved for appellate review. The court concluded that because the statute requires notice to be given to the Attorney General prior to the entry of judgment, merely filing an appellate brief, which necessarily occurs post-judgment, did not satisfy the requirements of KRS 418.075.

In the instant case, Kessler failed to notify the Attorney General during the pendency of the case before the trial court and therefore his constitutional claims were not preserved for review under KRS 418.075 under *Benet.*

■ Finally, Kessler argues that even if this court finds there is a proper standard under KRS 403.750(2) within the statute, the trial court erred by extending the DVO without using that standard especially because there were no allegations in Switzer's affidavit that would have met that standard. As stated above, in *Kingrey* this Court found that a DVO could be reissued even when no additional acts of domestic violence or abuse had occurred during the pendency of the original DVO. The Court relied upon the legislative purpose of Kentucky's Domestic Violence and Abuse regime as set forth in KRS 403.715 as well as the language of KRS 403.750(2). In his concurrence, Judge Knopf wrote separately in order to "clarify the grounds necessary to support renewal of a DVO." *Id.* at 70–71. He stated:

a DVO should not be renewed merely at the request of the petitioning party. Rather, there must be some showing of a continuing need for the DVO.... The

critical issue is whether the court finds that future acts of domestic violence remain a reasonable probability. There may be other conduct or circumstances, not amounting to a violation of the prior DVO, which may nonetheless be relevant to considering the continuing need for the DVO. The trial court may also consider the nature, extent[,] and severity of the original acts of domestic violence. In short, a court considering a motion to renew a DVO may consider the totality of the facts and circumstances in finding that acts of domestic violence and abuse may again occur if the DVO is allowed to expire.

*Id.*

The question then is whether the trial court in the instant case properly determined that the facts and circumstances established a continuing need for extending the DVO. A careful review of the record indicates that the trial court properly considered the facts and circumstances surrounding this case. The Judge stated that she was extremely familiar with the details of this case, as she had followed it through district and circuit court. Further, the trial court considered the dismissed criminal charges, Switzer's affidavit, and the fact that Switzer was only asking for a one-year extension of the DVO. A review of the record indicates that the trial court properly considered the circumstances surrounding the original issuance of the DVO and the effectiveness of the DVO in preventing any violence between the parties, which fully satisfies the purpose of Kentucky's Domestic Violence and Abuse policy.

For the foregoing reasons, the trial court's order extending the DVO for one year is hereby affirmed.

KELLER, Judge, concurs.

CAPERTON, Judge, dissents and files separate opinion.

CAPERTON, Judge, dissenting.

There are few if any places in the law where an affiant can stand behind an affidavit with impunity. The affidavit submitted by Switzer in hopes of continuing the DVO alleged that Switzer had filed "warrants" against Kessler, i.e., criminal charges, while the DVO was pending and that she feared Kessler. The filing of criminal charges is but mere accusation. Fear of another may or may not be based upon legitimate concerns. Mere acceptance of allegations contained in an affidavit as true without testing them by testimony before the court is without precedent.

If it is true that KRS 403.750 limits the evidence to be considered by the trial court in extending a DVO to testimony before the court that domestic violence or abuse has not occurred, how is it that Switzer was able to submit an affidavit alleging additional domestic violence? And if she could submit such an affidavit, why is it that the allegations therein escape the test of cross-examination? To the contrary, if the wording of the statute is taken literally, allowing testimony that relates only to facts which establish that domestic violence or abuse has *not* occurred, why would it not be prudent to call the accuser as a witness to establish the non-existence of domestic violence or, as in the case *sub judice*, the fallacy of her accusations?

I would reverse and remand to the trial court for a hearing.