Kevin MORRIS, Appellant

v.

Elizabeth Ann MORRIS (Now Grenough), Appellee

NO. 2014-CA-000857-ME & 2015-CA-000019-ME

Court of Appeals of Kentucky.

AUGUST 19, 2016; 10:00 A.M.

BRIEF FOR APPELLANT: J. Russell Lloyd, Louisville, Kentucky

BRIEF FOR APPELLEE: Briana Geissler Abbott, Louisville, Kentucky

BEFORE: ACREE, CLAYTON, AND JONES, JUDGES.

## OPINION

JONES, JUDGE:

This is a consolidated appeal. In the first appeal, the Appellant, Kevin Morris, challenges the trial court's April 24, 2014, order extending a prior Domestic Violence Order ("DVO") through April 23, 2017, on the basis that Appellant's continued behavior constituted contempt. The Appellant's second appeal relates to the trial court's attempt to vacate the April 2014 order on the contempt issue and simply extend the DVO through November of 2016. The trial court's second order vacating the April 2014 order was issued after the Appellant filed his notice of appeal.

After careful review of the record, we have determined that the trial court did not abuse its discretion when it issued the April 2014 order extending the DVO. The trial court's attempt to vacate that order was null because the trial court no longer had jurisdiction over it. Accordingly, we AFFIRM in part and REVERSE in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 24, 2013, Appellee filed a petition requesting the trial court to issue a DVO against Appellant. The Appellee's petition included the following allegations:

The respondent is my husband. We have been married for 10 years. We are currently in the middle of a divorce settlement. The most recent incident occurred on September 24, 2013. We have been on an up and down rollercoaster for the past month. The respondent had pushed me down one day, causing bruises and bleeding. The following days/weeks after, the respondent began to display very erratic behavior. One moment he would try to reconcile things, the next moment he would be screaming at me, calling me a "bitch." His moods were so unpredictable. I then decided to go file for a divorce. Upon being served the divorce papers, the respondent told me that he had been binging on prescription medications and alcohol. I told the respondent that I no longer wanted any communication with him unless it had to do with the cats or the condo. He refuses to listen and constantly calls and texts me daily. The respondent would message me via Facebook, and I would find out he was in front of my home using my location services (this tracks a person's whereabouts using GPS). He has also burned my personal property. Today he has called me over 18 times, leaving 4 voicemails and numerous texts. He called my job today to confirm if I was there, and when he found out I wasn't, he proceeded to text and call me. I still have pictures of all of the accusations I am making. I do not feel safe with the respondent around. I am afraid of what he can do, especially since his behavior is worsening. I want him to stay away from me.

The parties appeared for a hearing on the petition on November 14, 2013. Following the hearing, the trial court issued a DVO against Appellant. By its terms, the

DVO was to remain in place until November 13, 2014.

Next, on December 23, 2013, Appellee filed a motion alleging that Appellant was violating the DVO by making threatening Facebook posts. Specifically, Appellant posted: "just saying if anyone killed the b*tch right now, I wouldn't grieve the loss." He further posted: "watching and waiting" on his Facebook page at a location close to Appellee's mother's home. Additionally, he posted: "I wouldn't piss on her if she were on fire" and "I know she is at her mom's." Appellee stated in her motion that her mother's house is 1.9 miles from the location that Appellant cited on his Facebook page.

On January 9, 2014, the trial court held a hearing and entered an Order which provides: "the Court finds that there were Facebook posts, posted by Respondent [Appellant] which could reasonably be considered threatening by Petitioner [Appellee] based on the underlying behaviors which led to this order. Any further behaviors which could reasonably be threatening to Petitioner [Appellee] shall result in incarceration."

On April 11, 2014, Appellee again filed a motion alleging that Appellant was violating the trial court's orders by continuing to make threatening Facebook posts. On April 24, 2014, the trial court conducted a hearing on Appellee's motion. Appellee stated that the parties were involved in an ongoing divorce case and that after she sent an offer to Appellant's attorney, he wrote Appellee's attorney an April 9, 2014, email wherein he referred to Appellee as that "batshit crazy broad." Appellee testified that on that same evening, Appellant also posted on his Facebook page the following status: "[y]ou want to play games— 7 months and 4 days." Appellee testified that 7 months and 4 days from the date of the Facebook post was the date that the

DVO was set to expire. Appellant claimed in his testimony that he made this post because the state of Kentucky was trying to limit deer hunting. Appellant testified that the dates for deer hunting season and the DVO expiration happened to coincide. Appellee testified that she felt that it was a direct threat that Appellant planned to do something to her when the DVO expired.

Next, Appellee testified that on April 14, 2014, she became aware of another post by Appellant that said:

> Words to live by with a little advise [sic] to those that think they are untouchable—Just when you think you win it all, remember there is always a round two coming. That is when you find out who has got the motivation and drive for the long haul. If you engage in a battle, be prepared to lose.

This post was made after Appellee filed the motion to hold Appellant in contempt. Appellee testified that she felt threatened by this post. Appellee also testified that Appellant thereafter allegedly posted on Facebook in Korean "my ex bat shit crazy." Appellant testified that this Korean post meant "may you find peace."

At the close of the hearing, the trial court found Appellant in contempt, stating that Appellant had "again posted something in his attempt to play games" and that he "was continuing to try to circumvent the Orders of the Court." Initially, the Court verbally stated that it would extend the DVO for two years, but later verbally stated that the DVO would be extended to 2017. The court then entered the April 24, 2014, order extending the DVO to April 23, 2017, as a sentence for contempt. The order indicates that the trial court determined that Appellant's testimony was not credible. It goes on to provide:

> The Court finds Respondent continuing to post threatening messaging on social

media knowing the probability that the parties' mutual friends will relay the info to Petitioner for her protection.

The Appellant timely appealed the April 2014 Order to this Court.

Appellee had not specifically sought the extension at the April 2014 hearing. When the Appellant appealed the April 2014 Order, Appellee became concerned that if our Court reversed on appeal, she would be left without any DVO in place, as the original DVO would have already expired by its own terms. Therefore, on November 5, 2014, Appellee filed a motion requesting the trial court to vacate the April 2014 order and extend the DVO pursuant to KRS[1] 403.750.

On November 6, 2014, the trial court vacated the April 2014 Order as related to the extension. On November 12, 2014, the trial court conducted a hearing on Appellee's motion to extend pursuant to KRS 403.750. Ultimately, the trial court granted Appellee an extension through November 2016. Appellant also appealed this order.

## II. STANDARD OF REVIEW

Appellate review of a trial court's decision regarding issuance of a DVO "is not whether we would have decided it differently, but whether the court's findings were clearly erroneous or that it abused its discretion." *Gomez v. Gomez*, 254 S.W.3d 838, 842 (Ky.App.2008). As a reviewing court, we do not reach our own findings of fact or reweigh the evidence. We examine the trial court's findings only to determine if substantial evidence of record supports the findings. CR[2] 52.01; *Moore v. Asente*, 110 S.W.3d 336 (Ky.2003). Substantial evidence is defined as that which, when taken alone or in light of all the evidence, has sufficient probative value to induce convic-

tion in the mind of a reasonable person. *Stanford Health & Rehab. Ctr. v. Brock*, 334 S.W.3d 883, 884 (Ky.App.2010).

When a court exercises its contempt powers, it has nearly unlimited discretion. *Smith v. City of Loyall*, 702 S.W.2d 838, 839 (Ky.App.1986). Consequently, we will not disturb a court's decision regarding contempt absent an abuse of its discretion. "The test for abuse of discretion is whether the trial [court's] decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999) (citations omitted); *Meyers v. Petrie*, 233 S.W.3d 212, 215 (Ky. App.2007).

## III. Analysis

In January 2014, the trial court warned Appellant to stop engaging in harassing conduct. Yet, as found by the trial court, Appellant continued to disobey the court. As a result, the trial court extended the DVO based on its finding that Appellant was in contempt of its prior orders. Appellant argues that the trial court erred by extending the DVO as a sanction for contempt. We disagree.

In *Meyers v. Petrie*, 233 S.W.3d 212 (Ky.App.2007), we considered a similar situation in which the trial court ordered the defendant to complete domestic violence training as a sanction for contempt. On appeal, the defendant argued that requiring him to attend the training after expiration of the original DVO was an inappropriate sanction. In rejecting this argument, we held as follows:

In the present case, the family court found it necessary to take unorthodox measures to instill contriteness within Meyers in order to both vindicate and

---

1. Kentucky Revised Statutes.

2. Kentucky Rules of Civil Procedure.

preserve its dignity and authority. While we admit that it is unusual for a court to sentence someone to counseling, we recognize that when a court utilizes contempt to vindicate its authority and dignity, as here, its punishment should be reasonably related to the nature and seriousness of the party's contemptuous behavior. *U.S. v. Conole,* 365 F.2d 306, 308 (3d Cir.1966). Because Meyers had refused to attend court-ordered counseling, we find the family court's punishment, sentencing Meyers to that same counseling, to be particularly appropriate as it directly relates to Meyers' contumacious behavior. ... [W]e conclude that when the family court sentenced Meyers to complete domestic violence counseling, it was not attempting to enforce the defunct DVO but was properly exercising its contempt powers. We conclude that this was not an abuse of discretion.

*Id.* at 216.

Given the wide discretion trial courts enjoy over contempt proceedings, we cannot say the extension of the DVO as a sanction for contempt was inappropriate. *Newsome v. Commonwealth,* 35 S.W.3d 836, 839 (Ky.App.2001).

Setting the issue of contempt aside, we believe that the trial court had the authority to extend the DVO based on the evidence presented. Appellee presented evidence that the DVO had been effective in keeping Appellant away from her and that Appellant's posting suggested he planned to harm her after the DVO expired. These facts were sufficient to meet the standard necessary to enable a trial court to extend a DVO for the protection of the victim. *See Kessler v. Switzer,* 289 S.W.3d 228, 231 (Ky.App.2009). The original DVO was set to expire in November 2014, the trial court had the authority to extend it for an additional three years. The trial court's order

was certainly not an abuse of discretion. Appellant's irrational and clearly menacing conduct required Appellee to have continuing protection.

■ Furthermore, we reject Appellant's assertion that the trial court could not legally extend the DVO until it expired. This argument flies in the face of our case law, which plainly requires an extension to be sought prior to the expiration of the original DVO. *See Fedders v. Vogt–Kilmer,* 292 S.W.3d 905, 908 (Ky.App.2009).

■ This brings us to the second appeal, the trial court's attempt to vacate its contempt order by agreement of the Appellee after the notice of appeal had already been filed with our Court. A trial court's authority to act after a notice of appeal has been filed is very limited. While there is authority to vacate an order that has been appealed in certain extraordinary circumstances, the agreement of one of the parties is not one of those circumstances. As we have explained previously,

> [T]he Marion Circuit Court was without authority to enter any orders, except to grant or deny the CR 60.02(f)–60.03 motion, from the time the notice of appeal was filed on August 29, 2003 until the Court of Appeals' opinion became final upon the Supreme Court's denial of discretionary review on November 15, 2006. This would include the agreed order of December 15, 2005. The trial court exceeded the bounds of its authority in entering the agreed order, because not only was the substance of the order unrelated to the grounds raised in the CR 60.02(f)–60.03 motion, it directly concerned matters involved in the pending appeal.

*Young v. Richardson,* 267 S.W.3d 690, 696 (Ky.App.2008). Therefore, we reverse the

trial court's purported action in attempting to vacate its prior contempt order.

## IV. Conclusion

For the reasons set forth above, we REVERSE the trial court's November 6, 2014, order attempting to vacate the April 2014 contempt order, and AFFIRM the trial court's April 2014 order of contempt.

ALL CONCUR.