RENDERED: SEPTEMBER 1, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1039-MR

KELSEY HAYSE                                                          APPELLANT


APPEAL FROM DAVIESS FAMILY COURT
v.          HONORABLE THOMAS O. CASTLEN, JUDGE
ACTION NO. 20-CI-01099


TRAVIS MARTIN; AND
DAPHNE MURPHY                                                        APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, ECKERLE, AND GOODWINE, JUDGES.

ECKERLE, JUDGE:  Appellant, Kelsey Hayse ("Mother"), appeals from an order

of the Daviess Family Court continuing a prior, joint custody arrangement between

Mother, and Appellees, Travis Martin ("Father"), and Daphne Murphy

("Grandmother").  Mother argues that the Family Court improperly afforded

custodial standing to Grandmother without a finding either that Mother waived her

superior right to custody or that Grandmother qualified as a *de facto* custodian. We conclude that Grandmother had custodial standing pursuant to the prior, joint custody order in the juvenile action, and that the Family Court did not err in continuing that arrangement in the current custody proceeding. Hence, we affirm.

The underlying facts are complex and involve multiple actions, but those facts are not significantly in dispute. On August 24, 2020, Mother gave birth to K.H. ("Child"). On October 5, 2020, she initiated a paternity action against Father by filing a Paternity Complaint through the Daviess County Attorney's Office in Daviess Family Court Case No. 20-J-0343 ("the Paternity Action").

While that matter was pending, Father filed a separate petition to establish custody and visitation on November 11, 2020, in Daviess Family Court Case No. 20-CI-01099 ("The Custody Action"). On November 23, 2020, a Juvenile Dependency/Neglect/Abuse ("DNA") petition was filed on behalf of Child in Daviess Family Court, Case No. 20-J-00403-1 ("the Juvenile Action"). The petition alleged that Mother had tested positive for methamphetamine use on September 10, 2020, and again on November 23, 2020. The petition further alleged that Mother had an extensive history of methamphetamine use dating back to 2016, and that her three older children had been removed from her. Mother testified that her mother had temporary guardianship of two of those children.

- 2 -

Mother stated that she has visitation with the third child every Sunday, but there was no evidence of who had custody of that child.

At the temporary removal hearing in the Juvenile action, an Agreed Order was entered granting joint custody of Child to Mother; Father; and Father's mother, Grandmother. While the matter was designated as "non-removal," Mother's contact with Child was limited to supervised visitation. A report from the Department of Community Based Services ("DCBS"), dated December 30, 2020, indicated that Mother had completed a 30-day inpatient treatment. The report stated that "Permanency goal remains return to parent." The subsequent Disposition Order, dated January 12, 2021, instructed that Mother's visitation "shall be gradually increased to 50/50" to include overnight visits upon passing her hair follicle drug screens. Later reports in the Juvenile action stated that Mother had attended all required AA/NA meetings, had negative drug screens, maintained employment, complied with all requests of DCBS, and completed her case plan. Based on this progress, the Family Court increased Mother's parenting time to a full 2-2-3 schedule.

In the Paternity Action, an Agreed Judgment on the pleadings was filed on November 25, 2020. In the Custody Action, Mother and Father entered into a written settlement agreement, which was entered by the Court as a "Decree of Custody and Co-Parenting Time," on April 1, 2021. Thereafter, on May 12,

2021, Grandmother filed an intervening petition in the Custody Action seeking sole custody of Child. In an order entered on August 23, 2021, the Family Court granted the motion to intervene "without objection from any party." On November 30, 2021, Mother filed a motion to terminate the temporary custody order in the Juvenile Action, citing her compliance with all court orders and DCBS case plans. The Family Court denied that motion on February 25, 2022.

Grandmother's motion for custody was scheduled for an evidentiary hearing on April 11, 2022. Prior to that hearing, Grandmother argued that KRS[1] 403.822 granted her standing to seek custody as a "person acting as a parent" based upon her actual, physical custody of Child and her status under the temporary custody order. At the hearing, however, Grandmother argued that Mother had waived her superior right to custody. In the alternative, Grandmother asserted that she had standing as a *de facto* custodian.

Following the hearing, the Family Court entered Findings of Fact, Conclusions of Law, and a Judgment on June 2, 2022. The Court concluded that Mother had not waived her superior right to custody. But the Court also found that Grandmother qualified as a *de facto* custodian of Child. The Court found that Grandmother provided the vast majority of nurture, care, and support for Child from the date of the juvenile petition until at least June 1, 2021. The Court also

---

[1] Kentucky Revised Statutes.

noted that Child remained with Grandmother after that date at least 80% of the time. The Court separately found that Grandmother had standing to seek custody under KRS 620.027. Based on these findings, the Court concluded that it was in the best interest of Child to continue the temporary joint-custody arrangement.

Mother filed a motion to alter, amend, or vacate the judgment, CR[2] 59.05. In an order entered on August 1, 2022, the Family Court granted the motion in part and denied it in part. The Court agreed that Mother's participation in the Juvenile action tolled Grandmother's time for becoming a *de facto* custodian under KRS 403.270. However, the Court concluded that KRS 620.027 is applicable outside of juvenile dependency, neglect, or abuse cases. Since KRS 620.027 authorized the Family Court to place Child with Grandmother in the Juvenile action, the Family Court concluded that this section allowed it to continue that placement in the Custody Action. The Family Court designated this order as final and appealable pursuant to CR 54.02. Mother now appeals. Additional facts will be set forth below as necessary.

Mother argues that the Family Court erred in applying KRS 620.027 to a custody matter filed under KRS Chapter 403. Mother separately argues that KRS 620.027 is unconstitutional to the extent that it elevates a grandparent to a level of equal custodial footing with a parent. Mother fails to identify where this

---

[2] Kentucky Rules of Civil Procedure.

argument was presented to the Family Court. RAP[3] 32(4). Furthermore, KRS 418.075 requires a party challenging the constitutionality of a statute to provide written notice to the Attorney General. The record does not indicate that Mother provided notice to the Attorney General's office. Her failure to comply with the mandatory notice provisions of KRS 418.075 renders a constitutional challenge unpreserved for our review. *Benet v. Commonwealth*, 253 S.W.3d 528, 532 (Ky. 2008).

Turning to the remaining issues, Mother first contends that the Family Court violated her due process rights by applying KRS 620.027 when that statute had not been pleaded as a basis for seeking custody. Mother raised this issue indirectly in her CR 59.05 motion, arguing that Grandmother "expressly elected to proceed solely under the 'waiver of superior right to custody' strain of non-parent custody." But Mother did not contend that she was unfairly prejudiced by the Family Court's application of KRS 620.027. Therefore, we consider this argument to be unpreserved.

The primary issue in this case concerns the application of KRS 620.027, which provides:

> The District Court has jurisdiction, concurrent with that of the Circuit Court, to determine matters of child custody and visitation in cases that come before the District Court where the need for a permanent placement

---

[3] Kentucky Rules of Appellate Procedure.

and custody order is established as set forth in this chapter. The District Court, in making these determinations, shall utilize the provisions of KRS Chapter 403 relating to child custody and visitation. In any case where the child is actually residing with a grandparent in a stable relationship, the court may recognize the grandparent as having the same standing as a parent for evaluating what custody arrangements are in the best interest of the child.

Mother primarily argues that KRS 620.027 is only applicable to DNA proceedings brought under that chapter, and that it is not applicable to custody actions brought under KRS Chapter 403. Grandmother cites to *G.D. v. Barren Cnty. Attorney's Off.*, No. 2016-CA-001449-ME, 2017 WL 1536079 (Ky. App. Apr. 28, 2017) (unpublished) as holding that KRS 620.027 may be applied to custody proceedings filed under KRS Chapter 403. As in the current case, the child in that case was removed from the parents in a DNA action and placed in the temporary custody of a non-parent. But unlike in the current case, the matter continued in the DNA proceeding, resulting in an order of permanent custody to the non-parent. *G.D.*, 2017 WL 1536079, at * 2. This Court held that, while the custody standards of Chapter 403 were applicable to the determination of custody in the DNA action, the trial court could still apply the provisions of KRS 620.027 to afford standing to the non-parent. *G.D.*, 2017 WL 1536079, at *3.

Thus, while *G.D.* is not directly analogous to the current case, its reasoning remains relevant. KRS 403.822 grants a Kentucky Court jurisdiction to

make an initial child custody determination on behalf of a "person acting as a parent," who has physical custody of a child. *See also Mullins v. Picklesimer*, 317 S.W.3d 569, 578 (Ky. 2010). KRS 403.800(13) defines "a person acting as a parent" as:

> a person, other than a parent, who:
>
> (a) Has physical custody of the child or has had physical custody for a period of six (6) consecutive months, including any temporary absence, within one (1) year immediately before the commencement of a child custody proceeding; and
>
> (b) Has been awarded legal custody by a court or claims a right to legal custody under the law of this state[.]

As used in KRS 403.800 to KRS 403.880, "physical custody" means "physical care and supervision of a child[.]" KRS 403.800(14). This statutory definition of "physical custody" does not require exclusive care and exclusive supervision. *Mullins*, 317 S.W.3d at 575. Separately, KRS 403.270 grants custody standing to a non-parent who qualifies as a "*de facto* custodian." However, a non-parent who has physical custody of a child or "a person acting as a parent" may be afforded standing to seek custody without qualifying as a *de facto* custodian. *Mullins*, 317 S.W.3d at 575-77.

Here, the Family Court granted joint custody to Grandmother in the Juvenile action. The provisions of KRS 620.027 were clearly applicable to that proceeding. We agree with Mother that the temporary custody order entered in the

Juvenile Action was not a "custody order" within the meaning of KRS Chapter 403. Therefore, this matter was properly treated as an initial custody determination under KRS 403.270, rather than a modification of custody under KRS 403.340. *See London v. Collins*, 242 S.W.3d 351, 356 (Ky. App. 2007).

Nevertheless, the Family Court was entitled to consider the temporary custody order in determining whether Grandmother was a "person acting as a parent who has physical custody of a child" within the meaning of KRS 403.822. We also note that the Family Court consolidated the Custody, DNA, and Juvenile actions into one action. Consequently, we agree with the Family Court that the provisions of KRS 620.027 were relevant to the current custody proceeding.

Mother separately argues that there was no evidence supporting the Family Court's conclusion that Child was "actually residing" with Grandmother in a "stable relationship," as required by KRS 620.027. However, the evidence was undisputed that Grandmother cared for Child on a regular and repeated basis since shortly after Child's birth. While Child was never formally removed from Mother, Mother's time with Child was limited and supervised from December 2020 until June 2021. During that period, Child resided with Grandmother 80% of the time. The Family Court expressly found that Grandmother provided the vast majority of the nurture, care, and support for Child. Since this finding was supported by substantial evidence, we will not disturb the Family Court's conclusion.

Finally, Mother argues that the Family Court failed to make findings regarding the best-interest factors set out in KRS 403.270(2)(a)-(k). We note that Mother did not request additional findings in her CR 59.05 motion. It is well established that a "final judgment shall not be reversed or remanded because of the failure of the trial court to make a finding of fact on an issue essential to the judgment unless such failure is brought to the attention of the trial court by a written request for a finding on that issue or by a motion pursuant to Rule 52.02." CR 52.04. Here, the Family Court found that continuation of the current joint-custody arrangement would be in Child's best interests. The Family Court also pointed out that further proceedings involving parenting time and visitation would be reserved for later adjudication. Those matters will also be decided under the best-interests standard. In the absence of a request for additional findings, we conclude that the Family Court's findings regarding best interests were sufficient.

In conclusion, we recognize that Mother made considerable strides toward improving her situation and regaining full custody of Child. Those efforts entitle Mother to an increased role in Child's life, eventually perhaps leading to full custody. For this reason, our conclusions regarding the applicability of KRS 620.027 should not be read to circumvent the process followed in the Juvenile Action. The only question in this case is whether Grandmother had standing separately to seek an extension of the joint-custody arrangement previously

ordered. Obviously, any future determinations regarding custody must be decided under the best-interests standard, keeping in mind Mother's fundamental rights to the care and custody of Child.

Accordingly, we affirm the order of the Daviess Family Court.

ALL CONCUR.

BRIEF FOR APPELLANT:

Dan Clark
Owensboro, Kentucky

BRIEF FOR APPELLEE DAPHNE MURPHY:

Casey Hixson
Bowling Green, Kentucky