Jeremy WALKER, Appellant

v.

Nancy WALKER, Appellee

NO. 2016–CA–001191–ME

Court of Appeals of Kentucky.

MAY 5, 2017; 10:00 A.M.

BRIEF FOR APPELLANT: Edward L. Cooley, Lexington, Kentucky, Michael Robey, Lexington, Kentucky

BRIEF FOR APPELLEE: Nancy Walker, pro se, Cynthiana, Kentucky

BEFORE: COMBS, D. LAMBERT AND THOMPSON, JUDGES.

## OPINION

LAMBERT, D., JUDGE:

Jeremy Walker appeals the decision of the Harrison Family Court to issue a domestic violence order ("DVO") against him. In his appeal he asks this Court to determine whether the doctrine of *res judicata* precludes the issuance of a second DVO against an individual in a situation where no new incidents of domestic violence have occurred, and a secondary issue relating to whether the trial court abused its discretion in issuing the order based on the evidence of record. We hold the answer to both of these questions, in this situation, is "no," and, consequently, we affirm.

## I.  FACTUAL AND PROCEDURAL HISTORY

Jeremy Walker served as a law enforcement officer from 1993 until 2006, when he suffered a traumatic brain injury in the line of duty that forced his retirement. According to medical evidence in the record, he suffered damage to his frontal lobe, leaving him with a significant cognitive deficit in impulse control, severely impaired ability to adapt and respond to stress, severe depression, and chronic paranoid ideation.

After an incident in late 2012, Nancy Walker, Jeremy's wife, sought and obtained an emergency protective order ("EPO"). Following a hearing, a DVO was issued by the trial court "by agreement of the parties." This order forbade contact between the parties for a two-year period, but was amended, at Nancy's request, on February 6, 2013, to allow "non-violent contact" during that period. The two eventually divorced.

On November 17, 2014, as the expiration date of the DVO loomed, Nancy moved the trial court to amend the order to extend its duration for three more years. The trial court denied this request, allowing the DVO to expire on its own terms on December 17, 2014. However, on that date, the trial court entered a *sua sponte* order adopting the same terms as the DVO and directing that Jeremy not own or possess a firearm for a period of one year beginning on December 3, 2014. During this time, Nancy retained possession of Jeremy's two service weapons, which had been gifted to him by the Boone County Sheriff's Department upon his retirement.

When the December 17th order expired, Jeremy requested the return of the guns. Without an EPO or DVO in effect to prevent it, Jeremy obtained an order directing Nancy to return the guns on June 15, 2016. On that same day, Nancy filed the petition, which ultimately led to this appeal, seeking new protective orders. Therein, Nancy argued that newly discovered evidence, in the form of a psychological evaluation performed in April of 2016, justified a new protective order.

The trial court, with a new judge presiding, issued an EPO on June 15, 2016, and after a hearing, a new DVO on June 23, 2016. The trial court followed that ruling with written findings and conclusions on June 27, 2016. The court's findings included the following: Jeremy had stopped his psychological treatment (which resulted in the suspension of his disability benefits), Jeremy self-reported losing his temper and becoming agitated easily, Jeremy blamed Nancy for the divorce, Jeremy "struggles with severe depression, chronic

paranoid ideation, and ... myriad ... neurological concerns," as well as impulse control problems. While the report also notes that Jeremy denied having suicidal or homicidal ideation, the trial court noted its "serious concerns about Nancy's safety—especially in the event that Jeremy were in possession of firearms." Based on the prior DVO and the concerns noted herein, the trial court concluded that the evidence established by preponderance of the evidence that an act of violence had occurred in the past, and may occur again.

Jeremy moved to alter, amend, or vacate the second DVO on the basis of *res judicata* and the sufficiency of the evidence, the same arguments he advances in the instant appeal. The trial court denied his motion, and this appeal followed.

## II. ANALYSIS

### A. STANDARD OF REVIEW

Domestic violence orders are a statutory creation, their issuance governed by Kentucky Revised Statute (KRS) 403.740. That provision, in relevant part, reads: "Following a hearing ordered under KRS 403.730, if a court finds by a preponderance of the evidence that domestic violence and abuse has occurred and may again occur, the court may issue a domestic violence order[.]" KRS 403.740(1). On appeal, we review the trial court's factual findings for clear error, and legal conclusions for abuse of discretion. *Caudill v. Caudill*, 318 S.W.3d 112, 114–15 (Ky. App. 2010).

### B. THE DOCTRINE OF RES JUDICATA DID NOT OPERATE TO PRECLUDE THE TRIAL COURT FROM ISSUING THE SECOND DVO

The statute unquestionably requires proof of an act of domestic violence as a prerequisite to the issuance of a DVO.

KRS 403.740(1). The operative question for this case is whether the proof sufficient for the issuance of one DVO can be considered as proof for a subsequent DVO.

Jeremy argues that the sole act of domestic violence, which occurred in November of 2012, because it was addressed in the first DVO, as a matter of law, cannot be considered in determining whether to issue the second DVO. He argues that it meets all of the elements of issue preclusion under *Coomer v. CSX Transp., Inc.*, 319 S.W.3d 366, 374 (Ky. 2010).

However, KRS 403.735 expressly allows courts to look back and consider prior protective orders. It authorizes courts to "obtain the respondent's Kentucky criminal and protective order history and utilize that information to assess what relief and which sanctions may protect against danger to the petitioner ...." KRS 403.735(1)(a). While that provision concerns what relief is appropriate rather than the entitlement to relief itself, the fact that the provision allows for prior orders to be considered is illustrative. Further, the illustrative nature of KRS 403.735(1)(a) becomes all the more persuasive when examining KRS 403.740, which does not exclude prior orders from consideration. In fact, on this issue KRS 403.740 only requires a court determine whether domestic violence has occurred at some point in the past. KRS 403.740(1).

Nancy points to two cases where appellate courts permitted the reissuance of DVOs even in the absence of new domestic violence incidents. The Court held in *Kessler v. Switzer*, 289 S.W.3d 228, 231 (Ky. App. 2009), that "[n]othing in the statute requires [petitioner] to have presented proof of continuing violence or violations of the DVO." Likewise, in *Kingrey v. Whitlow*, 150 S.W.3d 67, 69 (Ky. App. 2004), the Court permitted the reissuance of a DVO, despite the respondent's testimony that he

"had not contacted her or made any threats against [the petitioner]" because the petitioner "testified that she continued to be afraid of him."

■ Jeremy attempts to distinguish these two cases, arguing that reissuance of an unexpired order and issuance of an entirely new order are legally distinct actions. While technically correct, his position is flawed, and case law shows us that Nancy followed appropriate procedure. In *Fedders v. Vogt–Kilmer*, 292 S.W.3d 905 (Ky. App. 2009), the Court dismissed a reissued order, contending that the petitioner should have filed a new petition after the expiration of the prior DVO. "[I]t seems so obvious that once a DVO has expired, then the petitioner would not seek an extension but rather simply file for a new DVO." *Id.* at 908.

■ Moreover, KRS 403.715(1) explicitly states that the provisions of KRS Chapter 403 should be interpreted to "[a]llow victims to obtain effective, short-term protection against further wrongful conduct in order that their lives may be as secure and as uninterrupted as possible[.]" To adopt the position that Jeremy urges would contradict the most basic of axioms regarding statutory interpretation: "In construing statutes, our goal, of course, is to give effect to the intent of the General Assembly. We derive that intent, if at all possible, from the language the General Assembly chose . . . ." *Jefferson County Bd. of Educ. v. Fell*, 391 S.W.3d 713, 718 (Ky. 2012) (quoting *Shawnee Telecom Res., Inc. v. Brown*, 354 S.W.3d 542 (Ky. 2011)).

In light of these authorities, we must conclude that the common law doctrine of *res judicata* does not apply in this instance, and the trial court did not clearly err or abuse its discretion in issuing a procedurally appropriate protective order.

## C. THE EVIDENCE IS SUFFICIENT TO SUPPORT THE TRIAL COURT'S CONCLUSION THAT ANOTHER EPISODE OF DOMESTIC VIOLENCE MAY OCCUR

Jeremy also challenged the trial court's finding that the evidence adequately supported the conclusion that another incident of domestic violence may occur if the DVO had not been issued. Jeremy points to fact that he had not committed any other acts of domestic violence during the three-year span of the two orders, and decries the trial court's ruling as unsupported by the record and "demonstrably false."

■ The record adequately showed by preponderance of the evidence that domestic violence was possible absent judicial intervention. It contained the report of the psychologist who evaluated him both in 2014 and again in 2016. The report included notations that Jeremy has a quick temper, significant impulse control problems, and chronic paranoid ideation. The report also stated that Jeremy's condition had not improved in the two years since Jeremy was last evaluated. Nancy also testified during the hearing that Jeremy was known to hold grudges—for more than two decades in one instance. She further testified that she feared for her own safety and that of her children. The trial court did erroneously include a finding that the November 2012 incident involved a firearm, but that single fact was not of such substance that it rendered the trial court's ultimate ruling an abuse of discretion in light of the other evidence. We agree with the trial court that "a firearm in the hands of someone with a grudge, poor impulse control, and paranoid ideation is a recipe for disaster." Such conclusion is consistent with the General Assembly's guidance on how to interpret the provisions of KRS Chapter 403. Therefore, we cannot conclude that the trial court committed clear

error or abused its discretion in issuing the new DVO.

## III. CONCLUSION

This Court, having carefully reviewed the record and finding no reversible error, hereby affirms the decision of the Harrison Family Court.

COMBS, JUDGE, CONCURS.

THOMPSON, JUDGE, CONCURS IN RESULT ONLY.