RENDERED:  DECEMBER 5, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0763-ME

JOHN MICHAEL TIGGELAAR, II                                    APPELLANT


                    APPEAL FROM FAYETTE FAMILY COURT
v.                  HONORABLE LIBBY G. MESSER, JUDGE
                    ACTION NO. 20-D-00534-002


BRITTNEY MARIE HERTOG AND
E.C.T., A MINOR CHILD                                         APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, A. JONES, AND TAYLOR, JUDGES.

CETRULO, JUDGE:  John Michael Tiggelaar, II, ("Tiggelaar") appeals from a

Domestic Violence Order ("DVO") entered against him by the Fayette Family

Court in favor of appellees.  On appeal, Tiggelaar argues that the case largely turns

upon this Court's prior opinion in *Walker v. Walker*, 520 S.W.3d 390 (Ky. App.

2017), and that the *Walke*r decision incorrectly rejected the doctrine of *res judicata*

in domestic violence actions. We disagree with his interpretation of *Walker* and conclude that our precedent supports the family court's decision herein. We affirm.

## PROCEDURAL BACKGROUND

Tiggelaar and Brittney Hertog ("Hertog") were previously married and had one child together. In August 2019, Hertog filed for divorce in Florida where the parties then resided. She left Florida for Kentucky in 2019 and filed a domestic violence petition in Fayette Family Court in May 2020. Tiggelaar also relocated to Kentucky. In July 2020, the parties jointly agreed to the entry of a one-year protection order of no contact except through the Talking Parents application and in compliance with the Florida divorce court orders.

When that order was near expiration, Hertog sought to extend it, but the parties then entered into a civil restraining order which allowed the prior DVO to expire. However, that agreed order continued to require only written contact between the parties, specifically prohibited harassing language and threats, and still required Tiggelaar to remain 500 feet away from Hertog. The record indicates that the parties' divorce was finalized in Florida in 2024. That divorce action continued to require supervised timesharing by Tiggelaar with his child with regular Zoom calls.

-2-

In March 2025, Hertog filed a new domestic violence petition which contained allegations of a recent text message by Tiggelaar. She alleged that he appeared intoxicated on a Zoom call with their child and that the child ended the call after becoming upset. He continued calling and texting Hertog, contending that he was not drunk and that she was in violation of the court order for monitoring his calls with the child. He threatened to contact his attorney and file legal action, ultimately texting, "So stop, or I will make you. Yes, that last bit is a threat. Bring it."

Hertog's petition did include that text threat, but also recounted in some detail the prior allegations from 2019 through 2020. Tiggelaar moved to limit the testimony and evidence to acts committed after the Florida litigation. The family court denied that motion, and the matter proceeded to a hearing on May 16, 2025. In so ruling, the family court stated that the evidence of the prior threats and proven acts of violence was relevant to determine if the statutory elements had been met for this newly filed petition and to allow the full context of the current text messages to be understood.

In her testimony before the family court regarding the recent event, Hertog stated that she texted Tiggelaar she would not be responding to further messages after the child had hung up from the Zoom call. She testified he was upset and stated that Dad did "not seem right." After Tiggelaar called her

"approximately 25 times in succession," she messaged him to stop calling. Several hours later, he made the threat that she perceived as more than a "legal threat."

Hertog also testified to several acts that led to the previous filing in 2020, including Tiggelaar causing personal injuries to her, sexually assaulting her, and making numerous threats to harm and even kill her. Some of those threats had been recorded and were played for the family court. Tiggelaar did not deny that these prior incidents had occurred. Rather, as he does here, he argued they were not relevant and were "stale" having occurred prior to 2021. He testified he had not seen Hertog outside of a courtroom in at least two years. He admitted he violated the previous restraining order by texting the March 2025 threat, but maintained it was his intention to simply threaten legal action. No other witnesses testified. At the conclusion of the evidence, the family court did enter the three-year DVO requested by Hertog. In so ruling, the court specifically found that Tiggelaar's threat would place a person in reasonable fear for her own safety and that other less restrictive options had been tried and failed. This appeal followed.

**STANDARD OF REVIEW**

Our review of the family court's decision regarding an entry of an order of protection is limited to "whether the [factual] findings of the trial judge were clearly erroneous" or whether the court abused its discretion. *Caudill v. Caudill*, 318 S.W.3d 112, 115 (Ky. App. 2010) (citation omitted). A family

-4-

court's findings of fact are not clearly erroneous if supported by substantial evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (citation omitted). Further, an abuse of discretion occurs only when a court's decision is unreasonable, unfair, arbitrary, or capricious. *Dunn v. Thacker*, 546 S.W.3d 576, 578 (Ky. App. 2018) (citation omitted).

## ANALYSIS

Tiggelaar claims the family court erred in its issuance of a DVO as there was insufficient evidence for the court to find that domestic violence had occurred and may again occur. He further argues that the family court abused its discretion in admitting and relying on evidence of acts that had occurred over five years earlier, had been pled in a prior action, and had led to the prior DVO being entered. He argues that the doctrines of *res judicata* or issue preclusion bar a subsequent suit between the same parties on matters that were or could have been brought in support of that prior action.

We address the latter argument first. As mentioned, this argument focuses on this Court's prior opinion in *Walker v. Walker*, *supra*. In that case, Nancy Walker obtained a DVO against her former husband in 2012 for a two-year period. 521 S.W.3d at 391. In 2014, as the expiration date loomed, she moved the court to extend its duration for three more years, which the trial court denied. *Id.* When that prior order expired, Jeremy Walker obtained an order directing Nancy

to return his weapons to him. *Id.* In response, she filed a second petition seeking a protective order relying in part upon a new psychological evaluation. *Id.* The court then granted a new DVO stating that it was based in part on the prior DVO and concluded that the preponderance of evidence established that an act of violence had occurred in the past and may occur again. *Id.* at 392. Jeremy Walker argued that the sole act of domestic violence occurred in 2012 and could not be considered in determining whether to issue the second DVO. *Id.*

This Court specifically addressed and rejected Jeremy Walker's claim of *res judicata* in that case, holding that Kentucky Revised Statute ("KRS") 403.735 expressly allows courts to look back and consider prior protective orders. *Id.* at 392. It authorizes courts to "obtain the respondent's Kentucky criminal and protective order history and utilize that information to assess what relief and which sanctions may protect against danger to the petitioner . . . ." KRS 403.735(1)(a). *Id.* Finally, the *Walker* Court held that while KRS 403.735 concerns what relief is appropriate, rather than the entitlement to relief itself, it is "all the more persuasive when examining KRS 403.740 which does not exclude prior orders from consideration." 520 S.W.3d at 392.

*Res judicata* has no application here. Even if the prior DVO was based upon the same incidents of Tiggelaar's domestic violence against Hertog presented in this matter, *res judicata* does not prohibit the family court from

considering those prior incidents in the context of his more recent conduct to determine if there was a basis for issuing a new DVO. In *Walker*, the Court considered "whether the proof sufficient for the issuance of one DVO can be considered as proof for a subsequent DVO[,]" and we answered that question in the affirmative. *Id*. at 392; *see also Lazar v. Lazar*, 678 S.W.3d 472, 476-77 (Ky. App. 2023) (reiterating *Walker*'s finding that "proof sufficient for the issuance of one DVO can be considered as proof for a subsequent DVO").

Tiggelaar also asserts on appeal that the *Walker* court misinterpreted the legislative intent of KRS 403.715, and that the *Walker* decision was erroneous in dismissing the applicability of *res judicata* and allowing family courts to consider previously adjudicated domestic violence as evidence of subsequent acts under KRS 403.740(1). We do not depart from the *Walker* holding, nor do we agree that the rejection of his *res judicata* argument will lead to "disastrous" results. We agree with *Walker* that a family court may consider prior acts or orders regarding domestic violence should a new threat occur and lead to the filing of a new petition. In the case herein, the evidence was undisputed that Tiggelaar had again threatened Hertog. The family court acted within its discretion in considering the prior acts and orders in assessing whether this new threat constituted domestic violence. The court also specifically noted that the parties'

prior agreed restraining order – a less restrictive option than a DVO – had been tried and failed. We find no abuse of discretion.

Next, Tiggelaar argues that there was insufficient evidence of domestic violence when the only new contact was a text message. He argues that her stated fear of injury or domestic violence was unreasonable. We disagree as "[t]he definition of domestic violence and abuse, found in KRS 403.720(1), includes 'physical injury, serious physical injury, sexual abuse, assault, or the *infliction of fear of imminent physical injury*, serious physical injury, sexual abuse, or assault between family members.'" *Abdur-Rahman v. Peterson*, 338 S.W.3d 823, 825 (Ky. App. 2011) (emphasis added).

Here, Hertog presented evidence of prior physical assaults which followed or coincided with previous threats and were similar to the threat she received by text in March 2025. While those previous events were a few years in the past and there was no evidence of any violation or contact for a couple of years, the testimony from Hertog was that she felt fear of physical injury. Tiggelaar's response to this was not to deny the threat, but to simply assert that it was not his intention to threaten physical violence, only legal action. It is not his state of mind or intent that is in issue in a domestic violence petition. For purposes of KRS 403.720, a victim's "belief that danger is imminent can be inferred from a past

pattern of repeated serious abuse." *Fraley v. Rice-Fraley*, 313 S.W.3d 635, 640 (Ky. App. 2010) (citing KRS 503.010(3)).

In *Williford v. Williford*, this Court explained that "the family court is in the best position to judge the credibility of the witnesses and weigh the evidence presented." 583 S.W.3d 424, 429 (Ky. App. 2019) (citing *Hohman v. Dery*, 371 S.W.3d 780, 783 (Ky. App. 2012)). We are also mindful that the domestic violence statutes are to be interpreted by the courts to allow victims to obtain protection against further violence and abuse. *Kingrey v. Whitlow*, 150 S.W.3d 67, 70 (Ky. App. 2004) (citing KRS 403.715(1)). The family court herein summarized her view of the evidence of the most recent events as follows:

> In March of this year Respondent admittedly texted the Petitioner aggressively and threatening litigation over her not providing him a hard copy of the child's report card. Later that day during the child's [virtual] visit the mother observed signs that [Mr. Tiggelaar] was intoxicated. The child appeared concerned and ended the call himself. Mother then texted him telling him that the call was ended due to his being drunk. When Respondent continued to try to call back she texted to stop calling and that the child was not going to answer another call. He then responded with threats of both further legal action as well as made the statement "stop or I will make you. Yes, that last bit is a threat." This last statement she felt was different than the prior threats of legal action but was a personal threat to her safety or the safety of the child.

While a text message in and of itself may not generally create a fear of imminent physical injury, the circumstances and history between the parties

become relevant to that perception. *See, e.g.*, *Hogle v. Hogle*, 710 S.W.3d 482 (Ky. App. 2025); *Gibson v. Campbell-Marletta*, 503 S.W.3d 186 (Ky. App. 2016).

## CONCLUSION

The family court had the opportunity to judge the credibility of the witnesses and testimony presented during the hearing. Based on the totality of the evidence, the family court found that an act of domestic violence had occurred and was likely to occur again in the future. We have reviewed the entirety of the evidence and conclude the family court did not err in its decision. As such, issuance of the DVO was proper. The judgment is AFFIRMED.

ALL CONCUR.

| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEES: |
|---|---|
| Ephraim W. Helton<br>Danville, Kentucky | Jason Rapp<br>Lexington, Kentucky |