RENDERED:  JANUARY 16, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0563-ME

MUHANAD HREH                                                                 APPELLANT

v.

APPEAL FROM JEFFERSON FAMILY COURT
HONORABLE DERWIN L. WEBB, JUDGE
ACTION NO. 20-D-500795-003

HANA KHATTAB                                                                  APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, A. JONES, AND LAMBERT, JUDGES.

LAMBERT, JUDGE:  Muhanad Hreh has appealed from the June 4, 2024,

domestic violence order (DVO) entered by the Jefferson Family Court pursuant to

a petition filed by Hana Khattab, his former wife.[1][2]  After considering the record,

the parties' arguments, and the applicable law, we affirm.

---

[1] We shall refer to the parties by their first names for ease of understanding.

[2] One child was born of the marriage, and the parties' marriage was dissolved in 2021.

Hana filed her first petition for a DVO against Muhanad on March 20, 2020, for an act that occurred on February 7, 2020, in Pike County. She described the circumstances as follows:

> We were driving in Pikeville, Ky and it was snowing really hard. Everything was fine, but when the baby started crying Muhanad pulled over on the side of US Highway 23 and unbuckled our son. I begged him not to but he was screaming and raging. I stepped out [of] the car to buckle the baby and he got back in and locked the car and told me that if I don't go back to the passengers seat that he would leave without me. I begged him again and he left the baby unbuckled while it was snowing. He came back to get me and I have a recording of him screaming (in Arabic) and saying that he will always unbuckle the baby when he is with him. Prior to this incident, we had an argument and I was holding our baby, Muhanad threw me on the bed and jumped on top of me and the baby and put his hands around my neck in [an] attempt to strangle me. Had I not fought back I don't know how far he would have gone. I didn't report this earlier because I was terrified of him. He's emotionally, verbally, and physically abusive. He's a narcissist and he manipulated me to believe that what he did was normal and that it was my fault. I am currently filing for divorce and custody since he acts on impulse and does not think twice before hurting me. Once he gets served with divorce papers, I cannot guarantee my safety.

The court held a DVO hearing on May 12, 2020. Hana testified about several incidents, including in October 2019 when he grabbed her wrist to take her phone away from her when she tried to contact her family members, the attempted strangulation at the end of 2019, and the February 2020 car incident. At that point, she realized she and the child were in grave danger, and she needed to do

something to protect them. Hana explained that she had waited so long to file the petition because she had been manipulated as well as both emotionally and verbally abused. She also stated that Muhanad had contacted her from an unknown number one time, even though he was not supposed to call her. If she did not obtain a DVO, Hana was concerned for her safety and thought he would come to Louisville to talk to her or go to her house.

On cross-examination, regarding the car incident, Hana testified that Muhanad pulled into a parking lot at the Dollar General store on U.S. Highway 23 during a snowstorm, she got out of the car, and he left with the baby unbuckled in the car seat. He turned the car around and came back a few minutes later; she got in the car and buckled the baby in. Hana did not report the incident, but she left him that day. Muhanad disputed Hana's allegations during his testimony.

After hearing closing arguments, the family court entered an oral ruling finding that Hana was credible and that, by a preponderance of the evidence, an incident of domestic violence had occurred and was likely to occur in the future. The court did not specify what incident or incidents supported its findings. Hana requested, and the court granted, a three-year DVO. The court noted that the child was not listed in the petition. Any visitation would be worked out between the parties. The court entered the written DVO that day (May 12, 2020).

On April 18, 2023, Hana filed a motion seeking to extend the previously entered DVO for an additional three years. The court held a hearing on April 25, 2023; Muhanad did not appear. In the calendar order, the court noted that Hana reported that she still did not feel safe, that Muhanad had taken the child away for more days than he was allowed, that he did not stick to the agreement regarding communication about the child only, and that Muhanad had recently moved to Louisville and had harassed her. The court granted the motion the same day and ordered the extended DVO to remain in effect for another three years, until April 24, 2026.

On January 2, 2024, Muhanad moved to vacate the April 25, 2023, order pursuant to Kentucky Rules of Civil Procedure (CR) 60.02 due to improper notice, which resulted in his failure to appear at the hearing. After hearing argument from counsel, the court granted the motion on March 11, 2024, and vacated the previous order extending the DVO.

On March 13, 2024, Hana filed a subsequent petition with the family court seeking a DVO against Muhanad. In this petition, Hana first described the procedural history of the case, as set forth above, and then the basis for her current claim:[3]

> I am still in fear of my ex husband. Him being anywhere
> near me is deathly terrifying. The abuse has not stopped,

---

[3] Capitalization errors have been corrected.

even with the DVO in place. My ex husband continues to harass me via text messages and video calls he makes to speak to our child. My ex husband to this day contacts people from our community to tarnish my reputation and pressure me to drop my DVO. My ex husband filed false allegations and charges against my father. He claimed my father has threatened to kill him, but when his attorney spoke to my father's attorney, he told him that Muhanad would drop the DVO against Hana's father if Hana drops the DVO against Muhanad. As expected, my father did not get a DVO due to his innocence. It is terrifying to me what lengths he is going to in order to get the DVO dropped. Why is he so persistent on getting rid of my protection and having access to me? And for him to make false charges against someone who has never hurt him in order to pressure me to drop my DVO makes me even more terrified for my safety. Muhanad filed a CPS report against me in October of 2023. He claimed that our child is beat and abused when in my care. He also claimed that we live in a moldy basement and the child is not safe with me. He also specifically stated that my brothers beat my child. CPS investigated and dropped the case due to my innocence. Again, he is constantly retaliating against me. It scares me that he is constantly making false allegations against myself and my family members. I know for a fact that without a DVO, I am unsafe. It is obvious he is trying to get the DVO dropped in order to have access to me and hurt me. Muhanad moved to Louisville about a year ago. Previously, we were doing visitation exchanges in a police station in Winchester Ky. I have had to call the police for assistance several times. 90% of the exchanges were traumatic for both our child and myself. After moving to Louisville, Muhanad was persistent that we meet in a secluded playground to do our visitation exchange. When I declined, he threatened that if we don't meet at the location he cho[o]ses, we would drive back to Winchester Ky to meet at the police station. This was very concerning to me considering we both lived in Louisville, but he is so controlling. If we can't meet at

the unsafe location he chose, he'd made me drive 2 hours. After lots of arguing, he forced me to meet him at a fire department. I had no choice but to do so. The fire department was also secluded, as there were no other individuals in sight. That was terrifying, so we now meet at family matters safe exchange[4] and it [h]as been so healthy and comfortable for both our child and [me]. Unfortunately, Muhanad is still insisting on no longer meeting at Family Matters. I am terrified of why he wants to meet me in a secluded park instead of a safe exchange location. Why does he want to be with me alone without anybody to protect me. Since moving to Louisville, Muhanad began attending the same church I attend. He has had several outbursts and verbally attacked several members there. The mosque (church) has now banned him from entering the property due to many complaints from mosque members fearing for their safety. On July 21, 2023, the security guard informed Muhanad that I was on the property and that he needed to leave due to the DVO. Muhanad refused to leave and stayed another 12 min[utes] on the property until the police showed up. Unfortunately, the police did not locate the DVO or he would have been arrested. [M]uhanad acknowledged to the police that there was a DVO in place. I was so afraid at that point. The lack of safety at that point was terrifying. Muhanad is constantly trying to frame me with false allegations. He is permitted daily facetime with our minor child and he is constantly finding ways to manipulate the app in order to use evidence against me. In 2020, I filed a DVO due to him putting his hands on me, strangling me, holding my arm to the point where I felt it was going to break. He would also hide my phone so I would not have access to call for help. On Feb 7, 2020, he unbuckled our 1 year old on a snowy day and drove off with him unbuckled at a dangerous speed. He said he would not let me in the car if I buckled the baby, and that's exactly what he did. He drove off without our baby and I was left by myself on

---

[4] Family Matters Exchange and Visitation Center.

the side of the highway in a very secluded place in eastern Ky. Muhanad is emotionally, verbally, and physically abusive and I fear for my safety on a daily basis.

The family court entered an emergency protective order (EPO) on March 13, 2024, the same day Hana filed the petition. It found that the allegations in the petition indicated an immediate and present danger of domestic violence and abuse. The court also scheduled a hearing on the petition.

In April 2024, Muhanad filed a motion to dismiss Hana's petition seeking a DVO. He argued that Kentucky caselaw requires additional acts of domestic violence in order to issue a new DVO and that Hana had not alleged any new threats or acts of domestic violence since the prior DVO. Muhanad also argued that Hana could not show that domestic violence was likely to occur again or that such violence was imminent or continuing. Hana objected to the motion, noting that such orders are based on past acts of violence or immediate threats of violence.

The court held a DVO hearing on May 28, 2024. After reading the allegations in the petition and swearing in the parties, the family court confirmed with Hana that the allegations still represented an accurate account of everything that had taken place. Hana added that after the EPO was granted, Muhanad contacted her on "appclose" regarding the filing of the DVO petition.

Hana testified first. She discussed the 2020 DVO proceedings, where she had alleged the attempted strangulation, that Muhanad tightly held her wrists during arguments, that he would hide her phone from her so she could not tell her family, and the snowstorm/car incident. Hana went on to discuss constant phone calls and problems with child exchanges, which concerned and scared her. She then discussed the July 2023 incident at the mosque, which she had been attending since 2016 with her family. Muhanad began to attend that mosque when he moved to Louisville. Hana was afraid for her safety if another DVO was not entered. She was afraid he would find a way to be with her in a secluded place and hurt her physically as he had before and that he would continue to make false allegations about her. She was afraid for the safety of herself and her family. On cross-examination, Hana agreed that the last act of physical violence occurred in 2020.

Muhanad testified next. Regarding the mosque incident, Muhanad testified that he was there at 11:00 p.m., at a time when the prayers are only for men. He did not expect Hana to be there at that time, and he did not see her there. He denied ever hitting or kicking Hana or ever physically abusing her, and he did not want to have any direct contact with Hana at exchanges or with her family. He wanted Hana and her family to leave him alone, to have a normal life, and to have parenting time and calls with his child.

The family court entered a three-year DVO on June 4, 2024, (set to expire on May 27, 2027) finding by a preponderance of the evidence that an act of domestic violence had occurred and was likely to occur in the future. The court included a typed document setting forth a brief procedural history, a summary of the testimony by Hana and Muhanad, and supplemental findings. The court then stated:

> The Court believes from the testimony of [Hana] that there is a continuing threat and need of protection. Looking at the totality of the circumstances including, but not limited to, the actions of [Muhanad] attending the Mosque on occasions where he knew or may have known [Hana] attended could easily be perceived as a form of psychological abuse, intimidation, and/or emotional abuse to [Hana] when other places of worship were available to [Muhanad].

In addition to granting the petition for a DVO, the court denied the motion to dismiss.

Thereafter, Muhanad filed a timely motion pursuant to CR 52 and 59.05 for additional findings of fact; to alter, amend, or vacate the June 4, 2024, order; and for a new hearing. In the motion, Muhanad again argued that Kentucky caselaw requires additional acts of domestic violence to issue a new DVO or extend one and raised arguments similar to those raised in his motion to dismiss. In April 2025, Muhanad filed an AOC-280 notice of submission form because the

-9-

court had not yet ruled on his pending motion. The family court denied his motion on April 17, 2025. This appeal from the entry of the DVO now follows.[5]

On appeal, Muhanad presents several arguments supporting his claim that the family court erred and abused its discretion in entering the DVO, including that it was based on the same allegations used to support a previous, expired DVO; that Hana failed to establish the requirements to obtain a DVO, including the finding that domestic violence is likely to occur again; that the court failed to consider the impact on him; and that the court's findings were insufficient to support the DVO. In her brief, Hana disputes Muhanad's argument that the family court abused its discretion, focusing on her theory that the court was not considering a new DVO, but rather was considering whether to extend the previous one.

---

[5] Although Muhanad listed the April 17, 2025, order denying his CR 59.05 motion in his notice of appeal as one of the orders being appealed (the other being the 2024 DVO), only the DVO is appealable. In *Hoffman v. Hoffman*, 500 S.W.3d 234, 236-37 (Ky. App. 2016), this Court explained:

> Orders denying CR 59.05 relief "are interlocutory, *i.e.*, non-final and non-appealable and cannot be made so by including the finality recitations." *Tax Ease Lien Investments 1, LLC v. Brown*, 340 S.W.3d 99, 103 (Ky. App. 2011). The reason is that "[u]nder the civil rules concerning appellate procedure, the filing of a CR 59.05 motion suspends the running of the time for an appeal, and the entry of an order overruling a CR 59.05 motion resets the time for appeal so that a party has the full thirty-days to begin the appeals process." *Mills v. Commonwealth*, 170 S.W.3d 310, 322 (Ky. 2005), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky. 2009).

In *Johnston v. Johnston*, 639 S.W.3d 428, 431 (Ky. App. 2021), this

Court set forth the applicable standard of review in DVO appeals:

> We review the entry of a DVO for whether the trial
> court's finding of domestic violence was an abuse of
> discretion. *McKinney v. McKinney*, 257 S.W.3d 130, 133
> (Ky. App. 2008). Our review of the trial court's factual
> findings is limited to whether they were clearly
> erroneous. [CR] 52.01; *Hall v. Smith*, 599 S.W.3d 451,
> 454 (Ky. App. 2020). A trial court's factual
> determination is not clearly erroneous if it is supported
> by substantial evidence, which is evidence of sufficient
> probative value to induce conviction in the minds of
> reasonable people. *Moore v. Asente*, 110 S.W.3d 336,
> 354 (Ky. 2003).

The *Johnston* Court went on to explain the associated statutes and case law:

> "A trial court is authorized to issue a DVO if it
> 'finds by a preponderance of the evidence that domestic
> violence and abuse has occurred and may again
> occur[.]'" *Castle v. Castle*, 567 S.W.3d 908, 915 (Ky.
> App. 2019) (quoting Kentucky Revised Statutes ("KRS")
> 403.740(1)). "The preponderance of the evidence
> standard is satisfied when sufficient evidence establishes
> the alleged victim was more likely than not to have been
> a victim of domestic violence." *Caudill v. Caudill*, 318
> S.W.3d 112, 114 (Ky. App. 2010) (citing *Baird v. Baird*,
> 234 S.W.3d 385, 387 (Ky. App. 2007)). In *Caudill*, this
> Court addressed the DVO process and discussed the
> construction of DVO statutes:
>
>> While domestic violence statutes should be
>> construed liberally in favor of protecting
>> victims from domestic violence and
>> preventing future acts of domestic
>> violence[,] the construction cannot be
>> unreasonable. Furthermore, we give much
>> deference to a decision by the family court,

-11-

but we cannot countenance actions that are
arbitrary, capricious or unreasonable.

*Id*. at 115 (internal quotation marks and citations
omitted).

*Johnston*, 639 S.W.3d at 431. KRS 403.720(2)(a) defines domestic violence and

abuse as: "Physical injury, serious physical injury, stalking, sexual abuse,

strangulation, assault, or the infliction of fear of imminent physical injury, serious

physical injury, sexual abuse, strangulation, or assault between family members or

members of an unmarried couple[.]"

First, we agree with Muhanad that the family court should have

considered Hana's petition as seeking a new DVO, not an extension of the expired,

original one. However, while the family court found that there was "a continuing

threat and need of protection" based upon Hana's testimony, it also found that

domestic violence had occurred and may occur again. It then considered the

totality of the circumstances, with the only specific action mentioned being

Muhanad's presence at the mosque where he knew or may have known Hana

attended.

Kentucky caselaw confirms that once a DVO has expired, a court is

not permitted to extend the expired DVO. Rather, the petitioner must file a new

petition seeking a new DVO:

[I]t seems so obvious that once a DVO has expired, then
the petitioner would not seek an extension but rather

-12-

> simply file for a new DVO. . . . [W]e believe that once
> the DVO expired on December 12, 2007, that case was
> concluded and no further action could be based upon a
> DVO that had expired. By waiting until January 16,
> 2008 (some 35 days later), [the petitioner] lost the ability
> to file to amend the order and should have filed a new
> domestic violence petition.

*Fedders v. Vogt-Kilmer*, 292 S.W.3d 905, 908 (Ky. App. 2009). *See also*
*Wooldridge v. Zimmerer*, 311 S.W.3d 254, 257 (Ky. App. 2010) (recognizing the
jurisdictional prerequisites for extending a DVO and noting that the trial judge
"does not have the authority to re-characterize a 'petition' for a DVO as a motion
for an extension of a DVO. Legally, they are not the same thing").

Under the circumstances of this case, Hana could not have sought an
extension of the original DVO; rather, she had to file a new petition, which is what
she properly did below. There is no dispute that Hana filed her second petition
after the original DVO had expired. The original DVO was entered May 20, 2020;
she timely moved to extend the DVO in April 2023, but the granted extension was
invalid due to lack of notice; and she filed the current petition on March 13, 2024.
We reject Hana's argument in her appellee brief that the family court essentially
extended the original DVO.

Accordingly, Hana had to prove by a preponderance of the evidence
that domestic violence had occurred and may occur again, pursuant to KRS
403.740(1), in order to be entitled to a new DVO. Muhanad contends that Hana

failed to meet this burden because the same allegations of domestic violence provided the bases for both her 2020 and 2024 DVO petitions. We disagree with Muhanad that the family court was precluded from relying upon Hana's past allegations of domestic violence. And we specifically reject his argument that this Court's opinion in *Walker v. Walker*, 520 S.W.3d 390 (Ky. App. 2017), and the unpublished opinion in *Brooks v. Brooks*, No. 2023-CA-0817-ME, 2024 WL 202890 (Ky. App. Jan. 19, 2024), support his assertion that new evidence was needed, as those cases included new evidence, which he argues was not present here.

In *Walker*, this Court addressed a factually and legally analogous case in which, like here, after a prior DVO had expired, the family court entered a new DVO based in part on the same act of domestic violence that supported the earlier order. On appeal, the respondent argued that the family court erred by failing to find a new act of domestic violence occurring after entry and expiration of the first DVO based upon the doctrine of *res judicata*.

We rejected that argument and affirmed, holding that the family court properly found that domestic violence had occurred even though the conduct at issue had also served as the predicate for the prior, expired DVO. We explained:

> Jeremy argues that the sole act of domestic violence, which occurred in November of 2012, because it was addressed in the first DVO, as a matter of law, cannot be considered in determining whether to issue the

-14-

second DVO. He argues that it meets all of the elements of issue preclusion under *Coomer v. CSX Transp., Inc.*, 319 S.W.3d 366, 374 (Ky. 2010).

However, KRS 403.735 expressly allows courts to look back and consider prior protective orders. It authorizes courts to "obtain the respondent's Kentucky criminal and protective order history and utilize that information to assess what relief and which sanctions may protect against danger to the petitioner . . . ." KRS 403.735(1)(a). While that provision concerns what relief is appropriate rather than the entitlement to relief itself, the fact that the provision allows for prior orders to be considered is illustrative. Further, the illustrative nature of KRS 403.735(1)(a) becomes all the more persuasive when examining KRS 403.740, which does not exclude prior orders from consideration. In fact, on this issue KRS 403.740 only requires a court determine whether domestic violence has occurred at some point in the past. KRS 403.740(1).

 . . .

Moreover, KRS 403.715(1) explicitly states that the provisions of KRS Chapter 403 should be interpreted to "[a]llow victims to obtain effective, short-term protection against further wrongful conduct in order that their lives may be as secure and as uninterrupted as possible[.]" To adopt the position that Jeremy urges would contradict the most basic of axioms regarding statutory interpretation: "In construing statutes, our goal, of course, is to give effect to the intent of the General Assembly. We derive that intent, if at all possible, from the language the General Assembly chose . . . ." *Jefferson County Bd. of Educ. v. Fell*, 391 S.W.3d 713, 718 (Ky. 2012) (quoting *Shawnee Telecom Res., Inc. v. Brow*n, 354 S.W.3d 542 (Ky. 2011)).

*Walker*, 520 S.W.3d at 391-93.

-15-

We then analyzed whether the evidence was sufficient to support the family court's conclusion that another episode of domestic violence was likely to occur again. We concluded that the evidence, which consisted largely of the respondent's psychological records and the petitioner's testimony regarding her ongoing fear, was sufficient. *Id.* at 393.

While the present case does not contain any psychological records, Hana presented ample testimony regarding Muhanad's continued efforts to get her alone, his harassment of her, and his appearance at places she was known to frequent, like the mosque. The family court also had the benefit of observing the parties and judging their credibility and motivations. Based on its observations and the evidence presented, which included several past acts of domestic violence and Muhanad's continued hostile behavior toward Hana, the family court concluded that it was likely without a DVO that another act of domestic violence would occur. We hold that substantial evidence of record supports this conclusion and that the family court did not abuse its discretion in entering a new DVO.

Finally, we reject Muhanad's argument that the family court failed to consider the impact a DVO has on him based upon the holdings in *Wright v. Wright*, 181 S.W.3d 49 (Ky. App. 2005), and *Rankin v. Criswell*, 277 S.W.3d 621 (Ky. App. 2008). In *Wright*, this Court held that a court must hold a full evidentiary hearing on a DVO petition: "[B]ecause of the immense impact EPOs

and DVOs have on individuals and family life, the court is mandated to provide a full hearing to each party. To do otherwise is a disservice to the law, the individuals before the court, and the community the judges are entrusted to protect." *Wright*, 181 S.W.3d at 53. Relying upon the holding in *Wright* in its discussion, the *Rankin* Court concluded that "because of the impact of a DVO on the family, the court must provide a full evidentiary hearing conducted in compliance with statutory and court rules." 277 S.W.3d at 626. These cases do not require a court to consider the impact a DVO might have on a respondent before granting one; rather, the Court was emphasizing the need for a full evidentiary hearing prior to the entry of a DVO because of the impact it would have.

For the foregoing reasons, the June 4, 2024, DVO entered by the Jefferson Family Court is affirmed.

ALL CONCUR.

| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| Allen McKee Dodd | James K. Murphy |
| Louisville, Kentucky | Louisville, Kentucky |